In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 21-2877

TERRY PAULSEN,

*Plaintiff-Appellant,*

*v.*

ABBOTT LABORATORIES and ABBVIE INC.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-04144 — **John F. Kness**, *Judge.*

———————

ARGUED MAY 24, 2022 — DECIDED JULY 8, 2022

———————

Before EASTERBROOK, WOOD, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* More than 18 years ago, Terry Paulsen received two injections of a prescription medication. After experiencing more health problems, she filed several personal injury lawsuits against the companies that developed and distributed the drug. Because her lawsuits were not timely filed within the applicable statute of limitations, we affirm the district court's decision granting the defendants' motion for summary judgment.

**I**

Paulsen was diagnosed with endometriosis, a gynecological condition involving tissue around the uterus. To treat her condition, she received injections of Lupron Depot 3.75 mg ("Lupron") on February 11, 2004 and March 16, 2004 from her physician in Georgia. Shortly afterward she began experiencing health problems, including severe bone and joint pain, memory loss, and fevers.

Six years later, on April 20, 2010, Paulsen filed a complaint in federal court in the Eastern District of New York. The complaint named Abbott Laboratories, TAP Pharmaceutical Products, Inc., and others as defendants. Several months later that case was transferred ultimately to the Northern District of Illinois, the district in which each defendant maintained its principal place of business. Paulsen voluntarily dismissed her claims in May 2014. About a year later, she moved to reopen the case, but the district court denied her request.

On May 11, 2015, Paulsen filed a second lawsuit in the Northern District of Illinois, asserting various personal injury claims in connection with the 2004 Lupron injections. These claims sought relief based on theories of product liability, negligence, breach of warranty, and misrepresentation. The complaint again named Abbott and TAP Pharmaceutical Products among the defendants. A circuitous procedural history followed. After multiple motions to dismiss, several amended complaints, and the addition of AbbVie Inc. as a defendant, only two claims remained: (1) a strict liability failure-to-warn claim against AbbVie and Abbott; and (2) a negligent misrepresentation claim against Abbott.

Limited discovery was permitted about "(1) when Plaintiff's claim accrued; (2) whether the second amended complaint as to AbbVie properly relates back under [Federal Rule of Civil Procedure 15(c)]; and (3) the roles of the remaining defendants vis-à-vis the manufacturing and development of Lupron." Following the close of discovery, the defendants moved for summary judgment. When evaluating Paulsen's claims, the district court applied Illinois procedural law and Georgia substantive law, reasoning that Paulsen's injury occurred in Georgia, and Illinois lacked a stronger relationship to the action, as would be required under the applicable legal standard.

The district court granted the defendants summary judgment on both claims. First, the court ruled that Paulsen's strict liability failure-to-warn claim was time-barred by Georgia's 10-year statute of repose.[1] O.C.G.A. § 51-1-11(b)(2) ("No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury.").

Second, on the negligent misrepresentation claim, the district court acknowledged that Georgia does not recognize a standalone misrepresentation claim in product liability cases. *Brazil v. Janssen Rsch. & Dev. LLC*, 249 F. Supp. 3d 1321, 1340 (N.D. Ga. 2016) (citation omitted) (stating that under Georgia law, there are "no misrepresentation claims for products

---

[1] Statutes of repose are considered substantive law. *Freeman v. Williamson*, 890 N.E.2d 1127, 1133 (Ill. App. Ct. 2008) ("A statute of repose differs from a statute of limitations in that it is substantive rather than procedural." (citing *Ferguson v. McKenzie*, 780 N.E.2d 660, 664 (Ill. 2001))); *Selby v. O'Dea*, 156 N.E.3d 1212, 1232–33 (Ill. App. Ct. 2020).

liability distinct from failure to warn claims"). Even if this cause of action did exist, the court reasoned, Paulsen's misrepresentation claim would fail on the merits because "the undisputed evidence show[ed] that Abbott did not make any representations regarding Lupron, let alone any false representations, to [Paulsen] or her prescribing physician." The court declined to address the defendants' arguments regarding the Illinois statute of limitations, because the other reasons were sufficient. Paulsen now appeals the rulings as to both claims.

## II

We review de novo a district court's decision on summary judgment. *Johnson v. Rimmer*, 936 F.3d 695, 705 (7th Cir. 2019). The defendants ask us to affirm the district court's decisions, in part because Paulsen's claims are barred by the applicable Illinois statute of limitations. We may affirm on any ground supported by the record. *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, 956 F.3d 950, 956 (7th Cir. 2020) (citation omitted). Although the district court did not address this issue, it was argued in that court and briefed on appeal, so we begin our review there.

When a federal court sits in diversity, as we do here, it looks "'to the choice-of-law rules of the forum state to determine which state's law applies' to the issues before it." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (quoting *Heiman v. Bimbo Foods Bakeries Distrib. Co.*, 902 F.3d 715, 718 (7th Cir. 2018)). Under Illinois choice-of-law rules, the forum state's law applies "unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020) (citations omitted); *see Bridgeview Health Care Ctr., Ltd. v. State Farm*

*Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014) ("A choice-of-law determination 'is required only when a difference in law will make a difference in the outcome.'" (citations omitted)). As for procedural matters, though, "the law of the forum controls[.]" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 300 (7th Cir. 2018) (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 194 (Ill. 2002)).

Under Illinois law, "[s]tatutes of limitations are procedural, merely fixing the time in which the remedy for a wrong may be sought, and do not alter substantive rights." *Id.* (alteration in original) (quoting *Belleville Toyota, Inc.*, 770 N.E.2d at 194). We therefore apply the appropriate Illinois statute of limitations when evaluating Paulsen's suit. Illinois has a two-year statute of limitations for personal injury claims—"Actions for damages for an injury to the person … shall be commenced within 2 years next after the cause of action accrued." 735 ILCS 5/13-202.

"As a general rule, a cause of action for personal injury accrues at the time [a] plaintiff suffers injury." *Wilson v. Devonshire Realty of Danville*, 718 N.E.2d 700, 704 (Ill. App. Ct. 1999) (citation omitted); *see Healy v. Owens-Illinois, Inc.*, 833 N.E.2d 906, 910 (Ill. App. Ct. 2005). When "an injury is not caused by a single traumatic event but rather occurs more gradually, courts apply the discovery rule." *Healy*, 833 N.E.2d at 910 (citations omitted). Under that common-law rule, "the limitations period begins to run when the party seeking relief both (1) knows or reasonably should know of his injury and (2) knows or reasonably should know that it was wrongfully caused." *Doe v. Hastert*, 133 N.E.3d 1249, 1255 (Ill. App. Ct. 2019) (citing *Parks v. Kownacki*, 737 N.E.2d 287, 294 (Ill. 2000)). Importantly, "[t]he limitations period begins running even if

the plaintiff does not know that the misconduct was actionable." *Id.* at 1255–56 (citing *Parks*, 737 N.E.2d at 294). Although the discovery rule "does not mandate that a plaintiff know with precision the legal injury that has been suffered," it anticipates that she will possess "sufficient information to cause [her] to inquire further in order to determine whether a legal wrong has occurred." *Healy*, 833 N.E.2d at 910 (citations omitted).

Paulsen first filed a complaint related to her alleged negative side effects on April 20, 2010. So, under the Illinois two-year statute of limitations for personal injuries, Paulsen's claims are barred unless they accrued on or after April 20, 2008. But a variety of personal, legal, and medical documents reveal that Paulsen knew, or should have known, of the alleged injury and its cause several years earlier. As examples, Paulsen wrote letters to her doctors throughout 2007 and early 2008, which included statements such as:

- "I am so sick, we know it's from the Lupron."

- "I wish to thank you for now seeing that I really do suffer some of the long[-]term effects of Lupron."

- "I want to [thank you] for listening to me and helping me with this awful illness from which we believe is from the Lupron in 2004."

In a 2005 letter to her doctor, Paulsen stated that "Lupron had terrible side effects," which included "severe bone and joint pain." "The effects of the Lupron were long lasting," Paulsen wrote, causing her to seek medical treatment as a result. She

made similar claims in a letter she sent to TAP Pharmaceutical Products in 2007.

Paulsen's medical records also show that as early as 2004, she believed Lupron caused her negative side effects:

- An April 22, 2004 message Paulsen left for her doctor, stated that she was "having pain after [L]upron injection. Mainly knees & feet."

- An April 4, 2005 medical-center admission form stated that Paulsen was "[p]laced on Lupron a [year] ago. [Patient] [s]tates 'a side effect of this med[ication] is bone pain & my back has been hurting ever since I started this.'"

- An October 31, 2005 doctor's note stated that Paulsen wanted "to discuss some concerns that she ha[d] related to her use of Lupron." Her prior symptoms included "extreme joint pain, particularly in her lower extremities as well as vasomotor symptoms and [a] feeling [of non-wellbeing]."

Similarly, medical forms completed by Paulsen attributed her side effects to Lupron as early as November 2006.

Other evidence confirms that Paulsen's claims accrued before April 2008. For example, in November 2006, Paulsen's cousin signed an online petition on her behalf. It stated that Paulsen had "suffered severe bone pain, confusion and memory problems" after receiving the Lupron injections. The post also suggested that the petitioners "ban[d] together and start a class action suit." Around March 2007, Paulsen's

mother filled out an adverse-event form for the Food and Drug Administration on her behalf, writing that "[a]fter 1 shot of Lupron," Paulsen "was unable to get out of bed in the morning" and suffered from "sever[e] bone pain, swelling," and "memory loss." That same year, both Paulsen and her doctor noted Paulsen's beliefs about the adverse effects of Lupron in Social Security records related to her disability claim. And more recently, Paulsen admitted in her 2019 deposition that one of the reasons she contacted a doctor prior to April 2008 was that doctor's familiarity with Lupron.

This evidence demonstrates that Paulsen's claims accrued long before she filed her first lawsuit in April 2010. As early as 2004, Paulsen knew she had suffered an injury and believed Lupron to be the cause. For years, she pursued medical treatment for these symptoms, while always attributing their cause to Lupron. By the time Paulsen filed her first lawsuit, four to six years had passed since her claims had accrued. That time period exceeds Illinois's two-year statute of limitations, even under the most lenient application of the common-law discovery rule. *Hastert*, 133 N.E.3d at 1255 (citing *Parks*, 737 N.E.2d at 294). Paulsen's claims are therefore time-barred.

Because Paulsen's claims are barred by the Illinois two-year statute of limitations for personal injuries, we need not consider the other issues the parties raise. We AFFIRM the district court's judgment.